May it please the Court, Counsel. I'm here on behalf of the appellant, Nicholas Tashman. This case is before the Court on a grant of summary judgment on a case arising out of 42 U.S.C. section 1981 for unlawful discrimination, as well as state law claims for assault and intentional infliction of emotional distress. I'll begin my argument with the grant of summary judgment on the section 1981 claim. On page 11 of the district court's decision, they held, in order to establish a discriminatory intent by an employer related to an employee's misconduct, plaintiff must show that the employer knew or should have known of the employee's racially hostile propensities. And the district court stated that it was relying upon this court's previous decision in Green v. Dillard's in stating that this is the standard which must be shown. But that is not the holding in Green. Green held that while such evidence is one way to establish an employer's liability, Green did not, in turn, overturn long-established principles of agency law and other methods of proving respondents superior. In fact, to the contrary, Green specifically went out of its way to cite a number of cases from other jurisdictions, Arguello and two Waffle House cases, as well as a long list of lower court cases, saying that the arguments presented by the defendant, similar to the ones presented here, have been rejected elsewhere, and then referring to those other cases as cases which are, quote, worthy of note. That, I would respectfully argue, is not the language that a court uses when it is rejecting other forms of or other theories of liability. In fact, what the court went on to do in Green is to say that it was to recognize other forms of liability. At page 540, the court noted that while in the Green case there was no evidence of discriminatory policies or discriminatory acts by managers, they left open the door that that, in fact, is a possibility. On the following page, on page 541, the Green court went on to state, a jury could also infer that inaction by Dillards contributed to the incident. There is evidence that Dillards lacked procedures to remedy discrimination towards customers, did not consistently keep records of complaints, and employed managers who did not take prompt, corrective action against discrimination. They also noted that Dillards failed to take reasonable measures to stop the discrimination, but continued instead to place the offending sales clerk on the sales floor and authorize her to interact with customers. All of that is noted in Green. Counsel, we are, I'll let you go, but we have de novo review now, right? Exactly. Okay, don't you think Green adopts the restatement second of agency? Yes. Factors, okay, great. Section 213. Yes, sir, exactly, 213, you're in. Yes. Now, which of those do you claim is your best argument for liability here? Which section? Yeah, A, B, C, or D. As you know, there are A, B, C, and D, and the Green case did A, B, C, and D. A, B, and C, D of section 213? Yes, sir, yes. We are positing that it's section 219, which was used in the cases that Green is citing and stating are worthy of note. It's just that Green did not need to go to 219, because in Green there were facts present that fit 213. But Green, we don't cite 219, right? We only cite 213? Correct me if I'm wrong. You cite to the cases that rely upon 219. Don't we on page 540 cite restatement second of agency 213? We, the court, on page 2, I'm sorry, it's page 540 of Green. Sure. Based upon, you say based upon the facts in this case, you then go on to state that you're using 213. Right, okay, proceed. There's no question that in Green 213 was used. Proceed. I'm not arguing with that. But Green did not say that all other, that the entire theory or all other theories of vicarious liability are excluded. And that's where I believe the district court erred, because we presented those arguments to the court. It did not even consider those arguments. It did not even consider 219 in any fashion, made no reference whatsoever to 219 or any other theory of vicarious liability. In this case, we had presented a very strong argument for something that Green certainly is alluding to, and that is ratification. What we have here, unlike Green, when the altercation, which is on videotape, I mean, there's no dispute that this, in fact, happened. After they dragged Mr. Doe off into the back to keep him from attacking Mr. Tashman, Mr. Tashman is standing there in the middle of the store, dumbfounded, and the store manager comes out, and instead of apologizing and saying, I will complete your transaction, I will help you with whatever you want, he kicks him out. He says, get out of the store. And Mr. Tashman, dumbfounded, leaves, clearly being denied any opportunity to complete his transaction whatsoever. So we've got the store manager now involved, and then, instead of taking any disciplinary action whatsoever against Mr. Doe, what they do is they let him continue working that day. They let him continue working every day for two full months, until I write a letter to corporate headquarters, and the HR person over the Midwest region in corporate headquarters says, what's going on here? This was never reported to me like it should have been. There is no documentation done by the store manager or by the district manager, both of whom had full knowledge of what happened and had reviewed the videotape on the day or the day after this incident occurred. With full knowledge, they covered that up. They did not document it. They did not report it. They did not discipline Mr. Doe at all. In fact, what happened was the district manager affirmatively told Mr. Doe, I'm not going to fire you. You can't get stronger evidence of ratification than someone coming to you, the district manager coming to you and saying, yo, I've seen the videotape, and I've heard what Mr. Tashman said, and I've got all the facts, but I'm keeping you on. I'm not even docking you pay. I'm not doing anything. I'm not making you go take a seminar or nothing. They completely ratified this. And when we took Mr. Doe's deposition, he- Counselor, are you trying to say it was negligent supervision? No, no, not negligent supervision. I'm saying it's ratification. Well, ratification is not in 213. No, it's not in 213. It's in another section of-oh, not in 213. No, it's in another section of the restatement. Let me see that. Let me get that for you, Judge. I'm trying to see what negligence caused the-assuming you can use negligence-what negligence caused the discrimination. That's what I'm driving at. Well, ratification is recognized by the restatement. I don't- No, no, no. Proceed, of course. Okay. So in any event, Judge, they failed to document, they failed to report, they failed to discipline. They continued to have Mr. Doe interact with customers. They affirmatively assured him that they wouldn't fire him. They did everything they could to ratify this until my letter came to their corporate headquarters threatening litigation. Let's assume for a second that you're right, that your argument is not foreclosed by Green. Are you suggesting we should adopt a position that the defendant is vicariously liable, the employer is vicariously liable, just because the employee was at work? No, no. What I am asking the court to do is to adopt Section 219, which this court has recognized in the past, other Missouri courts have recognized in the past, which says that they must be acting within the scope of employment, which is my next argument after ratification. And we can go on and discuss that, in fact, right now since I'm running out of time here. Scope of employment, Judge, the Missouri law is clear. As long as an act is incidental to the employer's business, it is performed in the course and scope of employment, even if mistakenly or ill-advisedly done. In fact, this court in Doe by Doe v. BPS Guard Service held that even if the employee's predominant motive may be to benefit himself, respondent superior will nonetheless apply so long as the employer's business actuates the employee to any appreciable extent. Here, there's just no question. What happened was, Mr. Tashner walks in, he says, I want to get my battery tested, so if it fails, I'm going to buy a new battery. Mr. Doe throws down a piece of paper and a pen and says, put your damn name on the piece of paper. That's not the actions of a sales clerk who is not threatening. I mean, that's a threatening type of statement. It's game on from that point on. The sole purpose of asking him to put his name on that piece of paper was for the benefit of advanced auto parts, not for some personal reason from Mr. Doe. Mr. Doe didn't want his name and number. Then when Mr. Tashman was stunned, he launches into this tirade about go back to your Tamil country and I'm going to kick your ass. All of this was actuated and part of the transaction of getting the battery tested. The district court's decision, I believe, is an error. It ignores other theories of liability for vicarious liability. It applied a very constricted, too narrow view of scope of employment, which is completely inconsistent with Missouri law. Missouri Supreme Court has clearly held otherwise. In fact, this court in Doe by Doe has clearly held otherwise. I will reserve the remainder of my time for rebuttal. Thank you. Very well. Thank you. Good morning. May it please the court. My name is Brian McBrady and I represent Advanced Auto Parts Council. This is a pretty clear case, I believe, especially with regard to Section 1981. Council did go on talking about green, but green stands for the logical proposition that you cannot make a 1981 case unless you can show evidence that the employer was negligent. That's what the finding of green was. It did discuss other cases, Arguello and others, Section 219 cases, but the green court said, well, we've never had to do this before. These cases come up all the time. Here's what our position is going to be. And that is that the evidence must show that the employer is directly, not inferentially, not vicariously, directly liable for harm resulting from its own negligence. And the court has looked at this case and Judge Autry recognized there was not a scintilla of evidence of any prior issues with his employee Doe. He, in fact, was described as a good employee. He was there all the time. He showed up. Never any consequences with anyone. These employment records went back 12 or 15 years, because that's how long he'd been with Advanced Auto Parts or the predecessor company that they acquired. The testimony from all the witnesses in the record, or testimony of witnesses, two things. They're utterly surprised by this outburst, because it's not like him. Mr. Doe is a 78-year-old man, long retired and working part-time there. The other is that he'd never said anything, ever had anything like this before. So I believe the 1981 issue is clear. Unless this court has decided to change the law, I think that the 1981 claim is properly dismissed. One other point. But even in Arguello, you still have to show that the actions alleged by the employee arose in the course and scope of his employment. All the focus here is not on course. It's on scope. Course is place and time. Scope is, what are the job duties? Did what he do arise out of his job duties? All of the cases cited by counsel, and just to look at some of the case, the Doe by Doe versus BPS, it still said you have to prove that that action arose out of the scope of his employment. And Judge Arguello clearly said assaulting employees is not in furtherance of the employer's business. All of these cases say, several cited in appellant's brief, all say the same thing. So Mr. Shuver says, lays down the pad and says, put your damn name on this, and that that is for the purpose of getting a battery tested. Free battery test. Something like that. Right. So at what point does it not become within the scope, and how do we decide that? Well, the facts were that he came in, he was given the papers, and you're required to put the names on. Doe got the papers back, and they were not signed. At that point, he allegedly said, put your damn name on the paper. When it turns into an assault, and they allege an assault. When it turns into assault, that's outside the course of scope of employment. In some of the cases cited by counsel, you have the bouncer, who his job is to remove unruly people from a bar. That's the scope of his employment, to lay hands on people and remove them. So when he gets too aggressive, that's still in the scope, because he's doing what he's supposed to do. Advance Auto Parts had these policies. Judge Autry noted that they had a very firm anti-discrimination policy. Their company policy was that the customer is always right. Their policy is, regardless of how idiotic a retail customer may be, they're still right. Advance Auto Parts also said, we do not disrespect our employees at all. So in all three counts, he violated company policy right there. So it's like driving down the highway, and you're doing the speed limit. That's your job as a truck driver. Now when you see a cow in the middle of the field, and you decide you want to run the cow over, that's outside the course and scope of employment. And in this case, Judge Autry said, assaulting people is not within the course and scope of employment. And that affects the assault case. But if I'm a truck driver, and I'm driving down the road, and my company policy is to follow the speed limit, and I decide to exceed it, and I now exceed the speed limit, am I now outside the scope of employment? No. If you're doing 70 and 65, I would say you would be in course and scope of employment. Now, but in this case, we're talking about an assault. We have three minimum issues where he has violated company policy. The other issue with regard to ratification, if I briefly address that, a council makes a large ratification, which doesn't apply under 213, for one thing. But number two, the timeline here is ignored by appellant's counsel. There's also a statement that was made that I must address. It's simply not true. Doe was never told, you're not going to be fired. That's not in the record. Yeah, but he was never disciplined, right, for six weeks? He was fired. No, he was not disciplined for six weeks, sir. He was made to stay home. If you look at the record, he was made to stay home for several days. And then he came back. So you say there was discipline. Yes. Okay. Was it labeled as discipline? I don't know. Okay. And second of all, did it involve him losing pay? Moving what? Losing pay, I'm sorry. Southern Missouri told me. Yes, he did lose pay. If you don't work, you don't get paid in advance auto parts. Okay. So he was made to stay home. So you say the record reflects how many days? It's in the deposition transcript of Dante Baradon. It's in Doe's transcript. It's all in there. Now, what happened was that Appellant overlooks is that the store manager reports it to the regional manager. The regional manager takes some things and does it. And his testimony, the regional manager's testimony is, I thought corporate was handling it. That's what he thought. That's why no further action was taken. That's still all within the Corporation Council. That doesn't make a difference about them pointing the finger at each other. No, no. You get that. He was fired within eight weeks. The actual investigation took two weeks. Okay. What happened within the first six weeks? Because the other side claims that for six weeks nothing happened. And you told me, let me finish just so you don't have to retract. You told me helpfully that he had some days off without pay. Now, what else happened in that six weeks? Nothing. He was brought back. There was no retraining. He's correct about that. Okay. He was brought back. Did corporate do anything else or any part of Advance Auto Parts? Sorry. Did any other part of the corporation do anything in those six weeks? Not that I'm aware of. I don't think they were able to reflect that. Thank you. Thank you, Your Honor. I'm done unless you have any further questions. Hearing none, thank you. I'll try to respond quickly. There is no record discipline. We have his personnel file. Was he off work for a few days without pay? Yes or no? No. What happened is Mr. Moran, when we took his deposition, said, I think that we must have suspended him. But when I asked Mr. Doe in his deposition, he point blank said no. There's no record in their file of any discipline. There's no write-up. There's no nothing. So whatever it was, it was a fiction. For six weeks, right? For six weeks. Six weeks is your frame, correct? Yes. Yes. Until November 12th, actually, is when he's terminated. And he has to be told multiple times by three different people in corporate who are above him, Mr. Moran, to go fire this man before he finally does. And this is after he's already told them, I'm not going to fire him. And even when he fires him, he doesn't tell him why because Mr. Doe testified, he never even told me why I was being fired. He just let me go. As you know, in Missouri, that's not required. You're well aware. Oh, I know it's not required. But you would think that if you are taking some affirmative action on this, that you would at least say, you know, that was a bad thing. You shouldn't be doing that, and that's why you're getting fired. They didn't. He was trying everything he could to ratify what Mr. Doe was doing. As far as the scope of employment, the Maniachi case, I don't think you can find a more egregious case where the Missouri Supreme Court said that a clerk who needed to get a receipt signed by a customer met the customer outside of work, after hours, handed the receipt to the customer, asked him to sign it, and then pulled out a gun and shot the customer. And the court nonetheless said there is respondeant superior liability for that. If there's respondeant superior liability for that, God bless us, there's got to be respondeant superior liability in this case. I ask that you reverse and remand this case and with some direction that the court is to look at Section 219 and other recognized theories of vicarious liability that have been employed by this court and other Missouri courts. Thank you very much for your time. The court thanks both counsel for your appearance and arguments and briefing today. The case is submitted and we will issue an opinion in due course.